IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Darian Johnston, #270548, ) | CIVIL ACTION NO. 9:09-0435-TLW-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Officer Sgt. Marie Davis, Wateree ) | |
| Correctional Officer sued in her individual ) | |
| capacity and her official capacity; ) | |
| and Sgt. Sammie Roberts, ) | |
| ) | |
| Defendants. ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections,[1] alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on January 13, 2010. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on January 14, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. After receiving an extension of time, Plaintiff filed a memorandum in opposition to the Defendants' motion on February 24, 2010, following which the Defendants filed a reply memorandum on March 8, 2010.

---

[1]Plaintiff has filed a change of address as of April 1, 2010. Plaintiff indicates that he anticipates being released from custody on that date. See Court Docket No. 94.



Defendants' motion is now before the Court for disposition.[2]

**Background and Evidence**

Plaintiff alleges in his verified complaint[3] that on January 5, 2008 he was in his assigned living area at the Wateree Correctional Institution when he was awakened by a noise that the Defendant Davis (a correctional officer) was making as she conducted a search/shakedown of another inmate. Plaintiff alleges he asked his bunkmate what was going on, and that Davis overheard him and shouted at him that this was not a good day for him to be "asking anybody anything." Plaintiff alleges that he replied "I am not talking to you ma'am", to which Davis responded by stating "I am going to be talking to you when I get finished over here."

Plaintiff alleges that after completing the "shakedown" of the other prisoner, Davis came to his bunk, stood over him "looking menacingly" and with a "threatening posture", and stated "since you want to know what is going on I am about to show you". Plaintiff alleges that Davis ordered him to stand up, and that when he asked why, she told him that he was going to the holding cell for interfering with her business. Plaintiff alleges that Davis then grabbed him by the arm and "snatched" him to a standing position.

Plaintiff alleges that he began walking away from Davis towards the entrance/exit of

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



the living area, when he was met by the Defendant Roberts, another correctional officer. Roberts then had a conversation with Davis, during which Plaintiff alleges he heard Davis tell Roberts that Plaintiff was a "smart ass". Plaintiff alleges that he exited the ward walking towards the holding cell as Davis had ordered him to do, at which time he told Roberts that he was not being a smart ass. Plaintiff alleges that Davis then grabbed him by his left arm and used his arm to slam him face first into the concrete wall. Plaintiff alleges that Davis applied pressure to his neck and was also using her fingernails. Plaintiff alleges that he was then handcuffed by Roberts. Plaintiff alleges that he never resisted in any way.

Plaintiff alleges that after he was handcuffed, Davis grabbed him "violently" and twisted his arms as she pushed and shoved him along the hallway towards the holding cell. Plaintiff alleges that Davis was yelling at him, and that after he got to the holding cell, Davis removed the handcuffs, and that while doing so stated "I am taking these handcuffs off, when I do take your best shot". Plaintiff alleges another correctional officer named Baldwin was present at that time, and that Baldwin motioned to him with a shake of his head in a side to side motion, signaling him not to respond to Davis' provocations. Plaintiff alleges he asked Baldwin if he could go to medical because his head and neck were hurting. Baldwin then left and returned a few minutes later, telling Plaintiff the medical department had directed him [Baldwin] to give Plaintiff some Tylenol. Baldwin also told Plaintiff that he could sign up of sick call for his complaints.

Plaintiff alleges that he was in a "tremendous amount of pain from the assault and battery" on him by the Defendant Davis, that his face had begun to swell, and that he was having problems with blurred vision and his ears were ringing. Plaintiff alleges that he did not sleep well that night because he was in a lot pain from injuries. Plaintiff also implies that Davis' attack on him

3



followed a conversation he overheard between Davis and the Warden concerning Davis having or smoking marijuana cigarettes.

Plaintiff alleges that the next morning, January 6, 2008, he spoke with a "Sgt. Cooper and Captain Pough", who sent him to medical. Plaintiff alleges the wounds on his neck and face were cleaned by a nurse and he was given a tetanus shot. Plaintiff also alleges that "Sgt. Cooper" took several photographs of his injuries. Plaintiff seeks monetary damages. See, generally, Verified Complaint, as amended.

Plaintiff has attached an affidavit to his complaint wherein he discusses the grievances he filed with respect to this incident. Attached to this affidavit are copies of several grievances and/or requests to staff member forms, as well as an "affidavit in support of grievance". As an attachment to his amended complaint, Plaintiff has attached an "affidavit in support of the medical summary", to which is attached copies of prescriptions for Ibuprofen he received from the Kirkland Correctional Institution pharmacy, beginning on June 12, 2009 and running through September 1, 2009 [totaling nine prescription labels]. In a "Declaration" filed November 30, 2009, Plaintiff states that he has been having violent headaches on the left side of his head daily for twenty-one months and he believes he has some type of nerve damage. Plaintiff further states in this declaration that he has continued to received Ibuprofen from a prison physician.

In support of summary judgment, the Defendant Davis has submitted an affidavit wherein she attests that she is a Sergeant at the Wateree Correctional Institution, and that at 9:30 a.m. on January 5, 2008 she was conducting a shakedown of an inmate's locker with the Defendant Roberts when Plaintiff began interfering with their duty by yelling insults and obscenities at them. Davis attests that once she and Roberts completed their shakedown of the other inmate's locker, they

4



went to Plaintiff's living area and told him to get off of his bed and go to the holding cell. Davis attests that Plaintiff refused, and continued to refuse despite being given two direct orders. Davis attests that she then grabbed Plaintiff by the right upper arm and pulled him off the bed, following which she released Plaintiff's arm and he was permitted to walk on his own accord. Davis attests that Plaintiff told her and Roberts that they had better not put their hands on him again.

Davis attests that once they got Plaintiff to the tunnel area that leads to the holding cell, he turned around to Roberts and told him in a threatening tone that he had better not put his hands on him, at which time she (Davis) put her right hand on Plaintiff's right arm and her left hand at the base of Plaintiff's neck and placed him against the wall so Roberts could place handcuffs on him. Plaintiff was then placed in the holding cell. Davis attests that she did not observe any bruises or cuts on Plaintiff following this incident, and that all times she used only the minimum level of force necessary under the circumstances. See generally, Davis Affidavit dated August 22, 2008.

Davis has also provided a supplemental affidavit wherein she additionally attests that she does not use illegal drugs, does not have any anger management problems, and that she followed all SCDC policies and procedures on the date in question. See Davis Supplemental Affidavit dated January 15, 2010.

The Defendant Roberts has submitted an affidavit wherein he attests that he is a Sergeant at the Wateree Correctional Institution, and that on January 5, 2008 he and Davis were shaking down another inmate's locker when Plaintiff began yelling at them and interfering with their duties. Roberts attests that when he and Davis were escorting Plaintiff to the holding cell, he turned around and stepped towards them in a threatening manner, at which time Davis placed Plaintiff against the wall while he placed handcuffs on him. Plaintiff was then taken to the holding cell.



Roberts attests that he did not see any bruises, scratches, or cuts on Plaintiff following this incident, during which only the minimum level of force necessary under the circumstances was used. See generally, Roberts Affidavit.

The Defendants have also submitted an affidavit from Donna Curry, who attests that she is an Administrative Specialist with the Health Information Resources/Central Office Annex of the South Carolina Department of Corrections, and that she has attached to her affidavit true and accurate copies of the records maintained by the Department of Corrections consisting of SCDC Health Services medical summaries for the Plaintiff for the dates January 5, 2008 to July 30, 2008. See Curry Affidavit, with attached exhibit (Docket No. 84-14). The Defendants have also provided copies of the Disciplinary Report arising out of this incident (Docket No. 84-9), an Order of the Administrative Law Court (Docket No. 84-13), a copy of the Defendant Roberts Incident Report (Docket No. 84-15), a copy of the Defendant Davis' Incident Report (Docket No. 84-16), and a copy of the Use of Force Record (Docket No. 84-17).

Plaintiff's medical summaries reflect that health services received a telephone call from the Defendant Davis on January 5, 2008 stating the use of force had been applied to the Plaintiff, and that he was complaining of his neck hurting. The report was that no abrasions or injuries were noted, and Davis was advised to give Plaintiff Tylenol or Motrin for pain. Plaintiff was subsequently seen in the medical unit on January 6, 2008 with complaints of a headache and being injured the previous day. Plaintiff was found to have a quarter size abrasion on the left side of his face and two approximately two inch scratches on his neck. No active bleeding was noted, no tenderness of scalp or muscle or neck muscle spasms were noted, and Plaintiff's pupils were equal and reactive to light. Plaintiff's abrasions were cleaned with soap and water, and Plaintiff was

6



advised how to keep them clean.

Plaintiff was next seen during a sick call on January 22, 2008, complaining of headaches and seeking different medications than he had been receiving. Plaintiff denied active pain at that time, but stated "it is there constantly". Plaintiff was seen thereafter in the Doctor's clinic on January 24, 2008, complaining that he had daily headaches since the incident of January 5, 2008. On examination Plaintiff's eye pupils were equal and reactive to light equally, his skull appeared to be normal, his carotid arteries were equal bilaterally with no bruit heard, and his heart was normal with no murmur. The only abnormality noted was a small area over the zygoma on the left that was more tender than the rest of the skull. Plaintiff was advised to give his medications a chance to get into his system and to make sure that he stayed well hydrated. Plaintiff continued to complain of headaches thereafter, but was generally found to be alert and oriented with normal examinations. He was diagnosed with tension headaches. Skull x-rays performed on March 13, 2008 found no fractures, and a subsequent x-ray perform on March 18, 2008 was also negative of any findings. See generally, Defendants' Exhibit (Docket No. 84-14) [SCDC Health Services Medical Summaries].

The Defendants have also submitted an affidavit from Kenneth Baldwin, who attests that he is a Corporal at the Wateree Correctional Institution, and that on the morning of January 5, 2008 he was present when Davis and Roberts escorted Plaintiff to the holding cell in handcuffs. Baldwin attests that he did not see any bruises, scratches, cuts, or injuries of any kind on the Plaintiff when he was brought to the holding cell, nor did he see any blood on the Plaintiff. Baldwin further attests that Plaintiff never complained to him about any alleged injuries he had sustained, nor did he witness Davis or Roberts being disrespectful in any way towards the Plaintiff. Rather, Baldwin attests that he witnessed Plaintiff shouting at, and being very disrespectful towards, the Defendant



Davis. See generally, Baldwin Affidavit.

In opposition to summary judgment, Plaintiff submitted another Declaration wherein he reiterates the claims set forth in his verified complaint. Plaintiff has also provided copies of the Defendants' responses to his discovery requests, as well as additional copies of the Defendants' exhibits.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

Defendants first argue that this action should be dismissed for failure of the Plaintiff to exhaust his administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law,



by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed futility]; Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying Booth v. Churner to affirm district court's denial of relief to plaintiff]. Accordingly, before Plaintiff may proceed on his claims in this Court, he must first have exhausted the administrative remedies that were available to him at the prison.

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Jones v. Bock, 127 S.Ct. 910 (2007). To meet this burden, the Defendants have submitted affidavits and copies of grievances. While Defendants concede that Plaintiff filed a Step One grievance relating to the incident set forth in the complaint, they argue that Plaintiff never proceeded to a Step Two grievance. Plaintiff argues, however, that the Defendants failed to process his Step Two grievance, and it is undisputed that Plaintiff filed a separate grievance in which he alleged that the Department of Corrections failed to process his original Step Two grievance. Plaintiff took this second grievance all the way through the Step Two process and to the South Carolina Administrative Law Court, thereby exhausting this grievance. See Exhibit (Docket No. 84-13).



Considered in the light most favorable to the Plaintiff, the evidence presented is sufficient to create a genuine issue of fact as to whether Plaintiff exhausted his remedies for purposes of this lawsuit, as there is a question of fact as to whether the SCDC properly processed a Step Two appeal of Plaintiff's initial grievance. See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [ administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) [stating that prison's failure to timely respond renders administrative remedies unavailable]. Therefore, the Defendants are not entitled to dismissal of this action at this time for failure of the Plaintiff to exhaust his administrative remedies. Anderson, 407 F.3d at 683 [Inmate's failure to exhaust administrative remedies is an affirmative defense to be proved by the defendant].

## II.

With respect to the merits of Plaintiff's claims, when reviewing allegations of excessive force, the Court must consider 1) the need for the application of force, 2) the relationship between the need and the amount of force that was used, 3) the threat to the staff and inmates as reasonably perceived by the prison officials on the basis of the facts known to them, 4) the efforts made to temper the severity of a forceful response, and 5) the extent of the injuries suffered by the prisoner. Whitley v. Albers, 475 U.S. 312, 321 (1986). See Hudson v. McMillian, 503 U.S. 1, 7 (1992) [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]; see also United States v. Cobb, 905 F.2d 784 (4th Cir. 1990), cert. denied, 498 U.S. 1049 (1991); Fuentes v. Wagner, 206 F.3d 335, 342 (3d Cir. 2000); Wilson v. Williams, 83 F.3d 870, 873 (7th Cir. 1996) [applied to pretrial detainee]; Thomas v. Sawyer, No. 97-2475, 1999 WL 155704 at *3 (N.D.Tex. Mar. 11, 1999); Moore v.



Martinez County Jail, No. 98-731, 1998 WL 602113 at *2 (N.D.Cal. Sept. 4, 1998).

Here, while Plaintiff argues that he did nothing to justify the force used against him, there is no evidence whatsoever (other than Plaintiff's own conclusory and self serving allegations in his complaint) to show that any force used against him was excessive for purposes of a *constitutional* claim. Plaintiff himself concedes in the allegations of his verified complaint that he initially refused to obey Davis' order to stand up, asking her "why". Plaintiff alleges that Davis then grabbed him by the arm and "snatched" him to a standing position. This conduct does not amount to a violation of a constitutional right. Cf. Bell v. Wolfish, 441 U.S. 520, 540 (1979) ["[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action"]. With respect to Plaintiff's claim that Davis grabbed his arm a second time and forced him against a wall while the Defendant Roberts handcuffed him, the mere fact that Plaintiff was physically restrained does not mean that his constitutional rights were violated. Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"]. Rather, Plaintiff must show malicious conduct by the Defendants. Wilkins v. Gaddy, No. 08-10914, 2010 WL 596513, * 2 (Feb. 22, 2010); see Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996) [because prison officials are entitled to use appropriate force to quell prison disturbances, and because these officials oftentimes must act under pressure without the luxury of a second chance, in order for a prisoner to prevail on an Eighth Amendment claim he must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm]. No such evidence has been presented here.

First, no evidence has been presented sufficient to give rise to a genuine issue of fact as to whether Plaintiff suffered any significant or serious injury as a result of this incident. While



Plaintiff alleges in his complaint and in his affidavits and declarations that he was seriously injured as a result of this incident, and that he suffered a lot of pain, he has submitted no medical evidence to show that he suffered any significant injury as a result of this incident. Cf. Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]. By contrast, the Defendants have submitted medical records from the prison showing that Plaintiff suffered, at most, only minor scratches and/or abrasions. See Silvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks omitted)].

Although it is not required that Plaintiff show he suffered more than a de minimis injury to maintain his excessive force claim; see Wilkins, 2010 WL 596513, at * 2 [Noting that the notion that significant injury is a threshold requirement for stating an excessive force claim was rejected in Hudson, 503 U.S. at 7]; the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry. Wilkins, 2010 WL 596513, at * 2 [holding that the extent of injury may provide some indication of the amount of force applied, and stating that "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim"], citing to Hudson, 503 U.S. at 9 (quoting Johnson v. Glick, 481 F.2d at 1033). Plaintiff has failed to produce any evidence showing a discernible injury in this case. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993)[Plaintiff's conclusory allegations insufficient to



maintain claim].

Concededly, even a de minimis use of force with no resulting discernible injuries may constitute cruel and unusual punishment in violation of the Eight Amendment where the facts surrounding the assault are "repugnant to the conscience of mankind." Wilkins, 2010 WL 596513, at * 2, quoting Anderson, 503 U.S. at 9. However, such facts are not present in this case, as all the Court has before it are Plaintiff's general and conclusory statements that the force used against him was malicious or sadistic, rather than in a good faith effort to maintain or restore discipline, without any supporting evidence. Papasan v. Allain, 478 U.S. 265, 286 (1986)[Courts need not assume the truth of legal conclusions couched as factual allegations.]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Hudson, 503 U.S. at 7 ["[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation"] (quoting Whitley, 475 U.S. at 321). Plaintiff being forced against a wall in order to allow handcuffs to be applied, with no other evidence of violence and no evidence of significant injuries, is not "malicious" or "sadistic" conduct "repugnant to the conscience of mankind". Estelle v. Gamble, 429 U.S. 97, 102 (1976)[primary concern of the drafters of the Eighth Amendment was to proscribe torture and barbarous punishment, as modified through the ages by evolving standards of decency]; House, 824 F.Supp. 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Sims v Artuz, 230 F.3d 14, 22 (2d Cir. 2000)["[T]he Eighth Amendment's prohibition against cruel and unusual punishment does not extend to de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind"]; Wilkins, 2010 WL 596513, at *



13

2 [An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim].

Therefore, while Plaintiff may conceivably have a state law claim arising from this incident, the evidence before this Court is not sufficient to create a genuine issue of fact as to whether constitutionally excessive force was used under the circumstances in this case. See Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]; DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]. Plaintiff's excessive force claim asserted as a constitutional violation should be dismissed.

## Conclusion

Based on the foregoing, it is recommended that Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 16, 2010
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

